UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| STERLING COMPUTERS CORP., <br><br> Plaintiff, <br><br> vs. <br><br> BILLIE JO FLING and KELYN TECHNOLOGIES, L.L.C., <br><br> Defendants. | 4:19-CV-04137-KES <br><br><br> ORDER GRANTING MOTION TO DISMISS AS TO KELYN TECHNOLOGIES |

Plaintiff, Sterling Computers Corp., filed this action for injunctive relief and damages caused by the alleged tortious conduct of defendants, Billie Jo Fling and Kelyn Technologies, L.L.C. Docket 1. Kelyn now moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). Docket 18. For the following reasons, the court grants Kelyn's motion to dismiss.

**FACTS**

Sterling is a corporation incorporated in California with its principal place of business in North Sioux City, Union County, South Dakota. Docket 1 ¶ 1. It provides information technology services to the federal government, state and local governments, and other clients. *Id.* ¶ 9. Sterling holds "strategic relationships" with federal agencies and "over 1,800 manufacturers of IT hardware, software, and solutions." *Id.* ¶ 11. It uses

Salesforce, a sales contact and pipeline database, to manage its client contact information, notes and information on bids it has submitted, and current bids. *Id.* ¶ 18. The information contained in the Salesforce database holds great economic value for Sterling. *Id.* ¶ 23. The names of clients and bid information, if obtained by competitors, could allow those competitors to engage in unfair competition by undercutting Sterling's bids. *Id.* ¶ 25. Finally, the information contains sensitive information about United States's military projects. *Id.* ¶ 26. Sterling's federal government customers entrust it to keep this information secure and confidential. *Id.* Sterling closely guards the proprietary information held in its Salesforce database and takes steps to protect it from disclosure. *See id.* ¶¶ 27, 28, 30, 34.

Billie Jo Fling, non-moving defendant, began working for Sterling in April of 2011 as an account manager. *Id.* ¶ 36. Fling received and signed a non-competition and non-disclosure agreement with Sterling as part of her employment. *Id.* ¶¶ 38-39, 42-43, 44, 45. Sterling alleges that as a salesperson, Fling had access to Sterling's Salesforce database and the confidential information it contained. *Id.* ¶ 46. She worked closely with numerous federal government clients and thus had access to those clients' confidential information in the Salesforce database. *Id.* ¶ 47. On or around November 20, 2018, Fling quit her position with Sterling. *Id.* ¶ 50.

In or around January of 2019, Fling began working at Kelyn. *Id.* ¶ 54. Kelyn is a limited liability company incorporated in Colorado with its principal

place of business in Parker, Colorado, and is Sterling's competitor. *Id.* ¶¶ 3, 54. On or around May 22, 2019, Sterling learned that Fling was "rendering sales services for Sterling customers with whom she had actual contact while employed by Sterling[.]" *Id.* ¶ 55. Sterling alleges that Fling "is using Sterling's confidential information to improperly solicit Sterling customers with whom she had actual contact while employed with Sterling[.]" *Id.* ¶ 56. Sterling also alleges that "Kelyn was aware when it hired Fling that Fling's former employer was Sterling, and that she possessed valuable information regarding Sterling customers that could be used to Kelyn's benefit." *Id.* ¶ 58. Kelyn referenced specific accounts Fling oversaw at Sterling on its website. *Id.* ¶¶ 58-59.

On or around May 30, 2019, after it learned about Fling's alleged use of its confidential information, Sterling reminded Fling of her obligations under Sterling's employee handbook and non-compete agreement. *Id.* ¶ 60. It also informed Kelyn of "Fling's and Kelyn's obligations to not interfere with Fling's agreements with Sterling and to not improperly use Sterling's confidential information." *Id.* ¶ 61. Kelyn responded on June 24, 2019. *Id.* ¶ 63. According to Sterling, Kelyn received, and continues to receive, "a benefit from Fling's improper solicitation and rendering sales services for Sterling customers with whom Fling had actual contact while employed at Sterling." *Id.* ¶ 64.

Sterling filed suit against Kelyn and Fling on August 6, 2019. *Id.*; *see* Docket 1. Sterling alleged several claims against Kelyn. *Id.* at ¶¶ 82-92, 93-102, 103-108, 109-116, 117-122, 123-127. It asserted that personal jurisdiction over Kelyn exists in South Dakota under *Calder v. Jones*, 465 U.S. 783 (1984),

"because [Kelyn] engaged in intentional and tortious conduct expressly and/or uniquely aimed at Sterling, which is a South Dakota corporation." Docket 1 ¶ 7.

The court granted limited jurisdictional discovery regarding Kelyn's motion to dismiss. Docket 46. After completing discovery, Sterling filed supplemental jurisdictional facts detailing Kelyn's contacts with South Dakota that Sterling alleges render Kelyn subject to personal jurisdiction in the state. Docket 61. The supplemental facts state that on March 20, 2018, Kevin Cronin, Kelyn's Vice President of Sales, received Fling's resume and cover letter from Mike Kuhn, a former Sterling employee. *Id.* ¶ 1. Sterling alleges that the resume contained its confidential information, including revenue numbers and business opportunities attributable to Fling. *Id.* ¶ 4. The facts do not state where Kuhn was located when he sent Fling's resume to Kelyn. *See id.* ¶¶ 1, 4.

In June of 2018, Fling reached out to Cronin to ask whether Kelyn was hiring. *Id.* ¶ 2. Cronin informed her that Kelyn was not. *Id.* In October of 2018, Fling again contacted Cronin. *Id.* ¶ 3. Cronin informed her that Kelyn may have an open position in December. *Id.* Fling's last day of employment with Sterling was November 20, 2018. Docket 1 ¶ 50. Fling again contacted Cronin in December of 2108 to ask about the position. Docket 61 ¶ 5. Kelyn planned to have a position open in January of 2019, so it began interviewing and negotiating employment with Fling. *Id.* During negotiations, Fling forwarded to Cronin her email correspondence with Sterling about her covenant not to compete. *Id.* ¶ 6.

Cronin passed the information along to others within Kelyn. *Id.* The jurisdictional facts do not allege that Fling resided in South Dakota during the negotiation process or that Kelyn reached out to her in South Dakota or elsewhere. *See id.* ¶¶ 2-10.

Sterling also alleges that Kelyn had "numerous" other contacts with entities in South Dakota. *Id.* ¶¶ 11-40. These other contacts include a business deal between Kelyn and a United States Geological Survey (USGS) data center located near Sioux Falls. *Id.* ¶¶ 11-26. As a part of the business relationship with the USGS data center, Kelyn sent around 180 emails to USGS employees in South Dakota and received around the same number between 2012 and 2019. *Id.* ¶¶ 20-21. Cronin also traveled to Sioux Falls in 2013 and presented a three-hour proposal. *Id.* ¶ 11. Kelyn received two direct orders from the USGS data center, totaling around $6,200. *Id.* ¶¶ 15-16. Sterling does not allege that the present cause of action relates to Kelyn's relationship with the USGS data center.

Kelyn's contacts with entities in South Dakota also include calls and emails its employees made to Sterling's employees in September of 2019. *Id.* ¶¶ 27-40. Sterling and Kelyn jointly explored business opportunities, and Cronin was introduced to a Sterling employee via email regarding a request for a price quotation on one of Kelyn's products. *Id.* ¶ 29. Kelyn prepared a quote for Sterling for the product. *Id.* ¶ 30. The quote had Fling's name on it. *Id.* Sterling does not allege that the proposed joint business venture between Sterling and Kelyn relates to the present cause of action.

5

## LEGAL STANDARD

On review of a Rule 12(b)(2) motion to dismiss, facts are viewed in the light most favorable to the plaintiff. *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 592 (8th Cir. 2011) (citing *Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996)). The court may consider pleadings, affidavits, and exhibits in support of or in opposition to the motion. *Id.* In order to defeat a Rule 12(b)(2) motion based solely on affidavits and written evidence, the plaintiff has the burden of making a prima facie showing of personal jurisdiction. *Id.* at 591-92.

## DISCUSSION

Federal courts may assume personal jurisdiction over out-of-state defendants in a diversity case " 'only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause.' " *Id.* at 592 (quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073 (8th Cir. 2004)). Because South Dakota's long-arm statute confers jurisdiction to the fullest extent allowed by the Due Process Clause, the evaluation requires only a determination of whether the assertion of personal jurisdiction comports with due process under the Fourteenth Amendment. *Larson Mfg. Co. of S.D. v. Conn. Greenstar, Inc.*, 929 F. Supp. 2d 924, 926 (D.S.D. 2013) (citing *Dakota Indus., Inc. v. Ever Best Ltd.*, 28 F.3d 910, 915 (8th Cir. 1994)). The Supreme Court has established that a court may only exercise personal jurisdiction over an out-of-state defendant in cases where the defendant has "minimum contacts with [the State] such that the maintenance of the suit does not offend

traditional notions of fair play and substantial justice." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (alteration in original) (internal quotations omitted).

The sufficiency of a defendant's contacts are analyzed under five factors: "(1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996). "The first three factors are primary factors, and the remaining two factors are secondary factors." *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010). The third factor under the Eighth Circuit test distinguishes between whether jurisdiction is specific or general. *Id.* A plaintiff's assertion of personal jurisdiction over a defendant in a particular forum must fall into one of two categories: general or specific. *Daimler AG v. Bauman*, 571 U.S. 117, 126-27 (2014).

I. **General Jurisdiction**

General jurisdiction permits a court to hear "any and all" claims against a party in a particular forum. *Goodyear*, 564 U.S. at 919. General jurisdiction allows personal jurisdiction over defendants where their contacts with the forum state are not necessarily related to the issue at stake in the lawsuit. *Arden*, 614 F.3d at 794. General jurisdiction over a corporation exists where the corporation's affiliations with the forum are sufficiently " 'continuous and systematic' . . . 'as to render [it] essentially at home in the forum State.' "

7

*Viasystems, Inc. v. EMB-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 595 (8th Cir. 2011) (internal quotations omitted).

Here, Sterling alleges that Kelyn has "[n]umerous [c]ontacts with South Dakota" that render it subject to general personal jurisdiction in South Dakota. Docket 61 ¶¶ 4-40; Docket 36 at 17 n.4. Sterling states that Cronin travelled to South Dakota to conduct business with the USGS data center located near Sioux Falls. Docket 61 ¶ 11. Cronin spent one night in Sioux Falls during that trip. *Id.* Kelyn received two orders from the USGS data center, totaling $6,200. *Id.* ¶¶ 15-16. Kelyn employees have sent 172 emails to the data center's employees since 2012 and have received around 180 emails from the data center's employees in the same time period. *Id.* ¶¶ 20-21. In September of 2019, Kelyn executives called and emailed Sterling employees who were located in South Dakota about a business opportunity unrelated to the USGS data center. *Id.* ¶¶ 28-29. Sterling alleges Kelyn pursued a number of other business opportunities with Sterling. *Id.* ¶ 38.

Kelyn's contacts with South Dakota do not rise to a level that is sufficient to confer general personal jurisdiction over it here. Even if Kelyn did, as Sterling alleges, have a substantial business relationship with the USGS data center, the existence of one customer in South Dakota does not render Kelyn "at home" here. Further, Sterling has not alleged that Kelyn and Sterling ever actually finalized a business endeavor together. Thus, Kelyn's email and phone correspondence with Sterling in September 2019 is far from establishing "continuous and systematic" contacts between Kelyn and South Dakota.

8

*Viasystems, Inc.*, 646 F.3d at 595. Kelyn does not have an office or any employees based in South Dakota. Kelyn's contacts with South Dakota do not meet the "higher due-process threshold" required to assert general jurisdiction. *Id.* Thus, if personal jurisdiction exists over Kelyn in South Dakota, it must be based on specific jurisdiction related to this cause of action.

## II.    Specific Jurisdiction

Specific jurisdiction permits a court to assert authority over an out-of-state defendant when the cause of action arises from or relates to the defendant's actions within that forum state. *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014) (citing *Miller v. Nippon Carbon Co., Ltd.*, 528 F.3d 1087, 1091 (8th Cir. 2008)). Courts may assert specific jurisdiction when the defendant is shown to have purposefully availed itself of the benefits and protections of the forum state, such that the defendant could "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The defendant may not be haled into a forum based on " 'random, fortuitous, or attenuated' contacts", or contacts arising from the unilateral actions of a third party. *Walden v. Fiore*, 571 U.S. 277, 286 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). The defendant's intentional conduct must form the contacts to the forum; the plaintiff cannot be the only link between the two. *Id.*

A defendant's tortious conduct directed at a plaintiff located in the forum state may constitute sufficient contacts to confer specific jurisdiction in the forum state when the circumstances show that the defendant may "reasonably

9

anticipate being haled into court [in the forum state][.]" *Calder v. Jones*, 465 U.S. 783, 790 (1984) (internal citation omitted). While " 'mere untargeted negligence' " cannot support jurisdiction, " 'intentional, and allegedly tortious, actions' aimed expressly at the forum state" may. *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1390 (8th Cir. 1991) (quoting *Calder*, 465 U.S. at 789). Under this rule, the plaintiff must show that the defendant knew that " 'the brunt of the injury would be felt by [the plaintiff] in the State in which [the plaintiff]' " resides and that the plaintiff "intentionally targeted the forum state." *Steinbuch v. Cutler*, 518 F.3d 580, 586 (8th Cir. 2008) (quoting *Calder*, 465 U.S. at 789-90). The *Calder* "effects" test requires that the plaintiff make a prima facie showing that the defendant's actions "(1) were intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered—and which the defendant knew was likely to be suffered—[in South Dakota]." *Johnson*, 614 F.3d at 796 (internal quotation omitted). The Eighth Circuit has "construe[d] the *Calder* effects test narrowly." *Id.* "[A]bsent additional contacts, mere effects in the forum state are insufficient to confer personal jurisdiction." *Id.*

Here, Sterling has failed to allege such additional contacts. Sterling rests its jurisdictional argument on the fact that its principal place of business is in North Sioux City, South Dakota. Thus, it argues that the effects of Kelyn's alleged tortious behavior were felt in South Dakota, satisfying the *Calder* test. But Sterling's supplemental jurisdictional discovery does not reveal the "additional contacts" required to satisfy the Eighth Circuit's interpretation of

10

*Calder*. Sterling alleges it received Fling's resume and cover letter from a former Sterling employee, but does not state if that employee was based in South Dakota or even if Kelyn reached out to the former employee to solicit the resume. Docket 61 ¶ 1. The facts show that Fling repeatedly reached out to Kelyn for employment, not the other way around. *Id.* ¶¶ 2, 3, 5. And Sterling has not shown that during the employment negotiations, Kelyn reached out to South Dakota in any meaningful way, or even knew Sterling was based in South Dakota when it hired Fling. Fling, a citizen and resident of Nebraska, was not in South Dakota at the time she contacted Kelyn. Sterling may have learned that Sterling was based in South Dakota if it inspected the non-compete agreement between Fling and Sterling in December 2018. *Id.* ¶ 6. But this happened after Fling terminated her employment with Sterling and the conclusion is speculative, was not raised by Sterling, and does not support an argument that Kelyn's actions were "uniquely or expressly aimed" at South Dakota. *Johnson*, 614 F.3d at 796.

Finally, Sterling bases much of its jurisdictional argument on *Dakota Industries*. But that reliance is misplaced. In that case, the defendant sold sportswear emblazoned with a trademark that the South Dakota-based plaintiff argued infringed on its own mark. *Dakota Indus., Inc.*, 946 F.2d at 1386. The plaintiff successfully alleged facts to support personal jurisdiction in South Dakota by showing that, in addition to the plaintiff's headquarters being in South Dakota, the defendant's goods bearing the infringing mark were sold in South Dakota. *Id.* at 1391. The record also showed that in at least one

11

instance, the defendant shipped its infringing goods directly to South Dakota. *Id.*

The facts in *Dakota Industries* constitute "additional contacts" compared with Kelyn's contacts with South Dakota here. And the *Dakota Industries* court acknowledged that the facts there were not an obvious case in which jurisdiction existed under *Calder*, but rather were in the middle of the spectrum. *Id.* Finally, since its holding in *Dakota Industries*, the Eighth Circuit has made clear that the *Calder* test is to be construed narrowly. *Johnson*, 614 F.3d at 796-97 ("We construe the *Calder* effects test narrowly . . . ."). Kelyn's contacts with South Dakota are fewer and less targeted than those of the defendant in *Dakota Industries*. Thus, Sterling has not alleged facts showing sufficient minimum contacts between Kelyn and South Dakota such that personal jurisdiction may be exercised over Kelyn here.

## CONCLUSION

Sterling has not shown that Kelyn had sufficient contacts with South Dakota to support either general or specific personal jurisdiction here, as is required under the third prong of the Eighth Circuit's five-factor test for personal jurisdiction. Kelyn's contacts with South Dakota are not so extensive as to render it "at home" in South Dakota to confer general jurisdiction. And its contacts with South Dakota relating to this controversy do not satisfy the Eighth Circuit's interpretation of the *Calder* effects test for specific jurisdiction. Thus, it is

ORDERED that defendant Kelyn Technologies' motion to dismiss without prejudice (Docket 18) is granted.

Dated December 18, 2019.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE